Jacob yes your honor good morning your honors may it please the court this case before the court on a denial of the plaintiffs motion for summary judgment and a grant of the defendant's motion for summary judgment within the appeal there are also a few evidentiary issues that that were raised and so what I'd do is go through some facts first at which time I'll deal with the evidentiary issues which I don't believe are the main focus or the main issue at hand and then deal with the significant issue and that being the lawfulness or unlawfulness of the ordinance in question apologize here thank you all the town of Ocean City Maryland has approximately 7800 residents and about 8 million visitors yearly and the 8 million is comprised of about 32% from Maryland about 34% from Pennsylvania about 10% from West Virginia Ohio Connecticut and 24% from Virginia New Jersey York and internationally and this is important in the context of this case because we're going to talk about the public moral sensibilities that this ordinance was targeting and in a sense it's not just targeting residents 7800 residents but rather the 8 million now Ocean City did adopt an ordinance that being ordinance 2017-10 that ordinance incorporates within it a gender-based distinction that was on the basis of protecting the public sensibilities so mr. Jacob if I could just stop you with what you said right before that is it is it your position that in considering whether the moral sensibilities are offended you look you don't look to the well your honor we're looking at as applied this ordinance actually ends up targeting a far greater basis than the residents but even if we just focus on the residents themselves as the facts also show it was a small minority of the residents that that arguably their opinion was even captured so well I'm just trying to make sure I understand what you're saying the test is I mean I grant I understand that you could say that people affected by the ordinance whether they you know what what they can wear or not wear could be people who are outside the municipality but is the test about whether the ordinance offends the moral sensibilities do we look just at the locality or do we look at whoever might visit I think both I think we have to look first what's the authority that says we look outside the locality well my point being your honor is that if in practice the ordinance actually causes discrimination I think the equal protection clause itself would say that it cannot stand but to answer your question directly I do believe that your honor is correct that in passing the okay thank you your honor prior to prior to enacting the ordinance which targeted the female bear chest in this Ocean City did not conduct any investigation did not conduct any public hearings did not consult peer-reviewed articles did not consult conduct public surveys they did not consult with experts or consult with would have Ocean City admits that it didn't conduct any any survey on how it would impact the tourist industry or or what impact would happen in the event that the ordinance was not there what we do know is that there are plaintiffs who testified that they had been bare-chested on the beach and there was no disorder prior to the enactment of the ordinance there's been a claim or there's been a lot of discussion about striking down this ordinance would support the minority view but in reality it's a specious argument because there are only few cases in the nation that are even brought in the majority population or the majority of the states we don't we don't see these laws even being enacted to therefore be challenged notably the 10th Circuit which actually governs six states has decided that such an ordinance cannot stand basically this came as a result of complaints to public officials from a few hundred people at best but as we saw in the facts there was those complaints were not properly documented there it's not clear whether there were some positive comments that may have been lost along the way I won't belabor the point but I think the record is pretty clear on on that point with respect to the evidentiary issues those go to who can opine on the public sensibilities and who cannot mayor the judge did give way to Mayor Richard Meehan and councilwoman I believe it's Mary Knight I apologize if I have her name wrong basically saying that they could testify as to what what they believe to be the public sensibilities but when asked what their qualifications were the mayor said that he was elected lives in Ocean City and he listens to what people bring to his attention he doesn't have any specialized training in that regard and Mary Knight explained her qualifications as the fact that she the way she was raised that she was family-oriented and that and that she has a Catholic background and that she has an education from Loyola but basically she said I'm pretty good at understanding when somebody has a concern so essentially there's there's no there's no specialized training that these individuals had in order to properly evaluate in a way the qualitative quantitative empirical data that these individuals were number one qualified to collect and number two analyzed with respect to to coming about and passing this this ordinance in contrast we have a Debbie her panic who the purpose of the statute which is to protect so statutes of this nature there they are governed it's our argument that the Equal Protection Clause of the 14th Amendment is supposed to protect everybody with equal protected protection under the law but in this case Ocean City has used laws to justify the existence of an ordinance that's based on sexist ID ideology that has been proven not to hurt women and children this is the very reason that we have a heightened standard that being the intermediate standard that that the courts have guided us to say that hey we need to be very careful that that we're not letting improper unlawful reasons creep into the law and the law is is riddled with with situations where that has occurred that the courts have reversed I mean keep in mind when our nation was founded this Constitution it was for white men landowners are you know initially it offended the public moral sensibilities to have women vote to have black men counted as people so the fact that that something may make other people uncomfortable is not a reason for a classification in you the fact is yes people will be uncomfortable as we continue to provide equality under the law we see that with a marriage we see that even now we're seeing what's going on is the public is demanding equal protection under the law when characteristics serve as the basis for discrimination we're seeing that right now around the nation with an intent or an effort to to eradicate systemic racism which I understand is a different issue but I'm just saying the public has consistently been demanding more and more equality under the law but but here this government objective that has been recognized the public moral sensibilities is an amorphous term that nobody seems able to really define and when we look behind well what did that mean to to Ocean City we find that it basically meant that people were uncomfortable this takes me to this court's 1991 opinion of USB Biasic which essentially handcuffed the district court with respect to how the court needed to rule based on the concept of stared decisive the court noted that that basically like it or not this is the law in this district but but importantly even Biasic understood that at some point the public is going to mature and progress and you know I believe we are there but I also believe that this standard that has evolved is being misused to circumvent the very thing that it was intended to protect and that's again that that public morality opinions are creeping into into the law but for an improper basis and in fact when we when we actually look back at the Biasic ordinance the preamble said that it was it was deemed necessary to prohibit certain conduct in order to promote the health safety and general welfare of the county's inhabitants whereas this ordinance says one does not have a right to impose one's lifestyle on others who have an equal right to be left alone ironically the ordinance is doing just that it is imposing the lifestyles the opinions the sexist ideologies of us very small group on to the masses on to the majority and again you know that it's not we are not supposed to be implementing a morality code but that is exactly what is what is happening here there there there was really no objective in in the passing of this statute those two coordinates he said that when questioned they were not targeting any special issue or problem particular to women they were not targeting any potential deleterious effects or secondary adverse effects that might happen they did not again they didn't conduct any research and then target some health problem they did no investigation into whether it could even harm children or promote a rape culture or negative impact on a female body image or negatively impacting breastfeeding rates all of which Debbie Herbannick or Dr. Herbannick her unroboted opinion mind you pointed out that this ordinance does essentially the exact opposite of what it purports to do and really interesting was that there is even an admission that the ideology crept in because when we when they were talking about the public sensibilities and moral sensibilities they were asked about the sexualization of the female body and there was an admission that it might be part of the issue that the sensibilities revolved around Ocean City understood that the sexualization of the female body could have been one of the reasons for the complaints but they never explored that they never explored if their complainants if their family values and moral sensibilities were simply archaic were these people who wanted this law because they believe that women should be barefoot and pregnant in the kitchen or whether you they should be wearing a burka in public and walking six feet behind men none of this was explored the whole reason for why these complaints even came about and there's a duty and a responsibility on our public officials to make sure that that what they are purporting to fix is actually a problem and the objective that that they are using actually problem and this brings to another issue the fact that this that's assuming the ordinance is overly broad and it talks about gender and sex it conflates the issue into one but our society has progressed and now understands that sex is designated at birth through genitalia identification but gender is something much more deep and here you know how is this going to be applied when there's a transgendered person who mind you the differences are are really small yes there are female breasts that that are large but there are male breasts that are equally large and there are females who have a flat chest and there are males who have flat chest there really is no outer distinction between the two there's an inner mammary gland but that can't be seen but is functional in the females and usually not functional in the males i'm out of time but of course i will answer any of the questions all right thank you mr jacob thank you mr bright yes thank you your honor i may please the court produce bright on behalf of the town of ocean city and if your honors have any questions i'd be happy to start there if not i will discuss very briefly the evidentiary issues that that arose below and on which the uh the trial court rules hearing no questions i will proceed to that the first issue was whether or not the trial court abused its discretion when it denied as moot plaintiff's motion to exclude purported expert opinions of mayor rick mian and council member mary knight this uh motion was denied as moot and in essence because their testimony did not include any expert opinions they were never identified as expert witnesses they were never proffered as expert witnesses and their testimony only fact testimony and to some degree lay opinions and more particularly on the subject of what the prevailing public moral sensibilities are in ocean city as it relates to one subject and that is whether or not exposure of the female breast still does and should so the you know you have federal rule of substance of evidence 702 it governs admissibility of expert opinions rule of civil procedure 2682 it governs disclosure of expert opinions and then you have daubert and the other cases none of that applies for its ruling on this particular issue because council member uh knight and mayor mian were not ever proffered and did not testify as expert witnesses there is the related evidentiary issue um but you said that they were allowed to give opinion yes your honor they were what what what what authority you have for lay people or anybody else other than expert to give opinion they're fact witnesses aren't they well there are fact witnesses and the authority that i would give rule rule of evidence 701 which which governs lay opinions and provides that a witness not testifying or certainly they were not um they testify in the form they provide testimony in the form of an opinion if it is rationally based on the witness's perception and i think the record is clear that their lay opinion will rationally based on their perception of what the all right let's get to the rational to rational what is so how many people did they talk to well the testimony was and of course this testimony was unrebutted was that as soon as self-discussion of how this issue arose may be useful here but there was a uh one of the plaintiffs in this case approached the state's attorney's office and um and the uh ocean city police department affirmatively proactively approached those two agencies um in late 2016 early 2017 to inquire what their position would be on the subject of female toplessness on the ocean city generally the state's attorney referred that matter to the ag's office for some guidance the ocean city police department of course waited until the state's attorney and the ag's office took a position but when that when that occurred there was a lot of reporting in the media about this issue and along the lines of you know you're trailing off council i can't hear you i'm sorry can you hear me now i hear you now okay i apologize there was reporting pretty extensive reporting in the media your honor uh after this question was raised and then the state's attorney went to the ag's office about it and the reporting was along the lines of the ocean city beaches may become nude beaches well as soon as that story made it into the papers there was a significant public um hue and cry over this issue and the mayor and council began to hear from many many people and what they testified to was they received many emails and and approximately 100 of those emails are in the record 100 i'm sorry you said 100 approximately 100 yes all right go ahead beyond that and of course the mayor and council are well known in this community as the mayor and council and everywhere they go publicly people may walk up to them and raise public issues they both testified that um they went this issue was addressed and raised and they were asked for their views on it they also received um many phone calls um there is in the habit as as was and and council member knight is no longer on the council when she was on the council they were both in the habit of of taking calls from whomever is a a citizen in the community so i assume that there are no numbers to these calls and people coming up to them right we don't have measured and and recorded numbers as to the calls we do have numbers as to the emails but we have their their testimony to that effect i think it's important to note what judge bradar held was you know their by virtue of their position both under the charter and otherwise by virtue of their position as elected officials their job is to take the the temperature of the on a whole host of issues this being no different than other issues where they evaluate what the public view is and then they legislate on that basis that's what uh city councils do that's what county council do that's what they did in this case um and they uh they waited however some length of time for the ag's opinion that took a long time they then passed because it was the beginning of a season as a and as i said this issue was getting a lot of attention and focus and there were a lot of upset people communicating with the mayor and council they they took the step to pass an ordinance at the beginning of the season and then coincidentally within about a week after that the ag's office issued its uh determination not in form of an ag's opinion formally as such but in the form of a letter uh from an assistant ag to the effect that they believe the court of appeals would find the ordinance to be to be constitutional under protection analysis so that reinforced the the legislative decision that they made but it was it did not predate the legislative uh decision that they made and you know the court went to so this law came into effect because someone asked about what they would do if they expressed their freedom in this manner on the beach it all it all began the sequence of events yes your honor with chelsea uh chelsea so so i guess this this moral sensibility is of was a recent uh vintage right because you didn't you didn't have a statute before someone asked the question is that right no your honor what i would say to that is that the the the prior to then the mayor and council apparently anyway did not see the need to specifically legislate on that issue because the sensibilities were what they were and people conformed themselves to the that well well now you had in the more modern era someone come along saying they wish to go they wish to go topless city that necessitated addressing that issue uh legislatively through the adoption of the ordinance ordinance but we don't take the position that the sensibilities of the public the moral sensibilities of the public on this issue relate to any recent events or arose only because of recent events it's just that the issue surfaced as an issue for concern um because of because of the events that predated the adoption of the ordinance but the parent the sensibilities of folks in ocean city is and has always been consistent with with with what's reflected in the ordinance and the ordinance is very clearly adopted to protect well you're testifying now council because what you just told me the basis for my question what's the rational basis you don't have any anywhere near a fraction of 7800 people basically says 100 people who wrote something documented and whatever the mayor that those two people their paths were and telephone calls we don't know are we to assume that everyone who didn't call is in favor or have no such moral sensibility i don't think you can make that assumption why not well i i would say this your honor that that uh there was testimony from uh mayor mian and councilmember knight to the effect that nobody came forward to them either by phone or in person or by email nobody came forward to them there may have been one or two emails i want i want to be clear on that but nobody came forward to them otherwise in support of the idea of female toplessness on the ocean city beach and it didn't have to be you just framed the facts you said it was widely done in the in the news and you said it was reported that we may have uh topless beaches in this town well then the fact that they don't come forward will suggest that okay so big deal why is that not a reasonable uh you know to make a conclusion to make well the mayor the mayor and when they legislate they must have an understanding of what the public will is and they determine they don't always there are many questions on which the mayor and council where they do not conduct detailed studies analysis and take polls before they legislate on legislate on a on a question a question affecting public interest and public concern was there a public hearing there was a public hearing on the ordinance yes your honor the and how many people spoke uh nobody spoke uh opposed to it um there were a couple of people that spoke either of the ordinance nobody spoke opposed to i thought i wonder how long it would take you to get around to that nobody spoke to it that's the form which they dims you i want to be i want to be clear nobody spoke opposed to the ordinance that was being adopted the only people who spoke at that hearing and there were one or two i believe spoke in favor uh at some length in favor of the ordinance right two people yes your honor and and of course that that meeting was publicly disclosed if there were widespread public sensibilities in favor of i i guess i would i would look at it this way there's no question that still today um under equal protection analysis protecting um against or protecting public moral sensibilities has been and is a uh an important governmental objective under supreme court and other jurisprudence there's no question about that we'll let you court you you're familiar with lawrence aren't you um as you as you state lawrence uh i i couldn't tell you what the case is about but your honor you don't know what the lawrence case is with supreme court i i may well know but as you as you're asking me i can't recall what lawrence is about okay but i i would cite the craig versus i was just talking about you talking about how we progressed you said you included supreme court um you know it's yeah is lawrence the case in terms of equal protection of of transgender folks and is that is that the recent supreme court case that you're referring to no no what about in terms of consenting adults in terms of sexual behavior between them you can't they can't be legislated well you prohibit those things and all those laws that they had like sodomy and all those things like that they had to go across the different and i'd raise it because you said the supreme court you started there oh you know we're just not in the same neanderthal type environment i i agree with that 100 your honor but this is not regulation of sexual behavior or sexual choices or or sexual uh you know um issues at all this is this is a regulation of public nudity and whether or not public nudity should still be defined as including exposure of the female breast there isn't any question that today and at all points in time the supreme court has said that regulation of public nudity to protect the important governmental objectives or to advance the important governmental objective of protecting uh public and moral sensibilities is perfectly constitutional really the only issue before before your honor and the other members of the court in this case is whether whether exposure of the female breast could still be included within the definition of nudity regulation of or prohibition of public nudity well we're not talking about nudity here because they have to reach that this is about equal protection how it falls differently on men and you see a lot of people think it's immoral for a woman to have her breast shown on the beach that's immoral well i i would phrase it differently than that people think it's immoral for women to show their breasts the public sensibility of the the residents of ocean city is that it the public sense of the public moral sensibility is that they don't want to see nudity and they define nudity is including exposure of the female breast so there isn't a morality issue beyond that it's the it's it's that equal protection analysis um allows a legislative body to pass legislative legislation that serves an important governmental objection objective and is substantially related to achieving that governmental objective and here counsel mentioned alluded to those and uh mr jayford mentioned a prior uh prior type of sensibilities like it wasn't until 1970 that you know loving versus virginia that uh miscegenation laws people felt it was immoral for people of different races to marry was it not defended on moral basis absolutely well under understood your honor and understood what was it the answer yes it was moral whether they thought it was morally sensible to the head of moral sensibility i believe so your honor and obviously that that was a view that did not was not proper ever and did not survive the test of time did you say it obvious and never was was never proper never proper right never probably we went a long time 1970 and that's uh how much passed the 14th amendment the 13th amendment that's a long time understood but in this case there there hasn't been any evidence presented by the plaintiffs in this case that would reflect that the public sensibilities toward this category of public nudity which is exposure to the female breast has changed as as as in in comparison to what it was in 1991 but it couldn't but part of it was to judge qualibum asked the question is it limited to just community and what authorities that is well evidence can come in it doesn't necessarily have to be the sine qua non of the question but the broader question why is it not relevant what other people beyond the confines of your fair town think about it that's in the context it doesn't have to be dispositive for it to be admissible that well i i guess i would agree your honor but there wasn't even evidence to that degree there was no evidence of any views nationally statewide within ocean city or otherwise public sensibilities toward this subject of exposure of the female breast other than the evidence put forward by the town of ocean city there was no evidence put forward by the plaintiffs that rebutted that or that told a different story in terms of what the public sensibilities may be on this subject in fact their their proffered expert testified there was no such study on the subject either nationally certainly not in the state of maryland or in the region so there wasn't any evidence at all presented by the other side on the subject of what the public sensibilities were i think the court the court's ears were were open to hear that evidence if it existed and if it was presented and we were certainly open to to respond to it uh if it had been presented but there was no such evidence all all of the evidence presented in the record below was to the effect that public sensibilities the public moral sensibilities of the town of ocean still it's ocean city still did not um accept a public nudity to include exposure of the female breast so you really had a one-sided record um and and under biasec biasec is it is precedent it is this this this court's prior ruling obviously it can be overturned by this court but under the doctrine of stare decisis there just there isn't a record in this case on which to overturn the ruling of the of this court in in biasec and then you have the of course the rulings from the other circuits that all support the finding of judge bradar uh below on equal protection analysis including very recently the spring court of new hampshire in the lily case and the uh the eighth circuit in the the springfield case the only different outcome is the tenth circuit's decision in in the fort collins case in that case we we addressed this in our briefs but that case is clearly distinguishable because the municipality in that in that case provided different uh justifications uh for the ordinance that they passed the court held that ordinance was not substantially related to achievement of those particular um uh purposes in this case we have a different purpose which is the protection of the prevailing rural and public sensibilities in the ocean city area with that unless the court has any other questions i will uh i will stop my argument thank you mr bright mr jacob you have some time thank you your your honor um first of all with respect to the last comments by uh attorney bright actually the the record was hardly one-sided dr debbie urbanic uh actually did uh provide opinions uh on this issue and uh i discussed those in the brief um basically the court wanted to i only a few minutes here but pages 12 and 13 of the brief identify those various opinions that she held this this case is about the agency of women to decide for themselves what they do with their body and when they're considered sexual objects and not the the fact is men were not permitted to be topless as recently as the i believe was the 1920s or 30s and had to fight for that right and now it's not a big deal because nobody has been killed by a breast um one of the first things that a baby sees when they're born is the female breast and it's interesting that while we have artistic expression and we have exceptions for breastfeeding everybody's safe when those events occur but suddenly it's incredibly offensive when breast is removed from a baby's mouth and put back into a shirt the the real problem uh or or question with respect to debbie urbanic it goes to weight and credibility not admissibility and not to qualification she her opinion should not have been struck but i think you're on i i think it hit the nail on the head two of 7 800 people made a complaint and we don't have any evidence here despite the city's or the town's burden of proof to up to show the the validity of the justice or the validity of the ordinance nothing was put in um i just counsel counsel why do you i mean i i think you're right that at the public hearing there were two people who spoke against you know and we could debate what what that means i mean some people would say the absence of any when an ordinance is being proposed to restrict suggest lack of support maybe you could say the other that the lack of more than two means no one really cares i i don't really know how to do that but don't we also have the evidence of the the two officials who talked about the documented emails and then talked about phone calls and interactions beyond what's to say you got two people you have two people who were elected to represent the folks who talked about what's documented and what's beyond that now we may think it's you know good or bad what they think but the question is what's the moral sensibilities and you know i i'm just trying to hard to figure out why that evidence doesn't count towards that despite you know the kind of that you raised number one is these officials being elected they they were elected but once the stated opinion of the mayor came out he actually received fewer vote and was elected by less than the majority of the people so that is telling in and of itself when when he was trying to say hey i was elected therefore they support this issue um going to to the other question evidentiary question uh well i'm sorry first says to the election pages 10 and 11 of my brief discussed that issue pages six and seven address the other issue that you raise your honor and that is let's give them the benefit of the doubt let's just say that there were um as as we were able to i tried to pull it out of them but on the record being conservative they had 150 complained by email or telephone i think they said uh 300 to 500 because they didn't really log them well in person and um they didn't log who those were we don't know if they were visitors as your honor pointed out we don't know if these complaints were visitors who came into town or whether they were residents of the town um there was simply there was simply no logging of this evidence so it could even be uh tested but but but really your honor what this comes down to is the fact that everybody deserves equality under the law and while the the other case uh that they referenced the 10th circuit case while it was different um factors or um government interest that they were looking at it circled right back to the fact that what was really going on was this was an attempt to legislate morality and that's exactly um what's happening here only even more blatant in this ordinance thank you your honor thank you so much mr jacob and thank you mr bright for your your arguments and appreciate that and uh we can't come down and greet you but uh please know that uh we very much appreciate your honor in this case and uh you will be safe and stay well thank you thank you your honor
judges: Roger L. Gregory, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.